## MERCANTILE N. BANK v. B. LAUTH.
NATIONAL PARK BANK v. B. LAUTH.

APPEALS BY DEFENDANT FROM THE COURT OF COMMON PLEAS
OF CENTRE COUNTY.

Argued April 22, 1891—Decided May 27, 1891.

[To be reported.]

(*a*) The act of June 2, 1874, P. L. 271, relating to partnerships, limited,
provides, in § 5, that "no debt shall be contracted . . . . . except by

Statement of Facts.

one or more of the said managers, and no liability for an amount exceeding five hundred dollars except against the person incurring it shall bind the association, unless reduced to writing and signed by at least two managers."

(b) A draft for a sum exceeding $500, drawn upon a limited partnership association, organized under said act of June 2, 1874, was accepted in writing in the name of the drawee " per Bernard Lauth, Chairman," Lauth being the only manager who signed the acceptance. It was afterwards delivered by Bancroft, another of the managers, to the payee, who had it discounted by a bank:

1. The bank was bound to know that the signatures of two managers were necessary to a valid acceptance of the draft, and was in no position to complain that it had been misled by Lauth; it might fairly be treated as having taken the draft on the credit of the drawer and indorser, as an unaccepted bill, without relying on the responsibility of the drawee: Per Mr. Justice WILLIAMS.

2. At all events, if Lauth signed the acceptance with the understanding that his name was to be one of the two required by the statute and that it was to be signed also by Bancroft, and placed it in the hands of the latter for that purpose, he did not become personally liable upon the draft by reason of the neglect of his fellow manager to complete the acceptance.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Nos. 358, 357 January Term 1891, Sup. Ct.; court below, Nos. 45 January Term 1888, and 302 August Term 1888, C. P.

On December 20, 1887, the Mercantile National Bank of the city of New York brought assumpsit against the Howard Rolling-Mill Company, Limited, upon a draft a copy of which is as follows:

"$1,479.38          NEW HAVEN, Conn., August 5, 1887.

"Four months after date, pay to the order of ourselves fourteen hundred and seventy-nine and thirty-eight one hundredth dollars, with current rate of exchange, the same to account of
                              "E. S. WHEELER & Co.

"To Howard Rolling-Mill Company,
     "Limited, Howard, Pa."

Accepted across the face as follows: "Accepted August 9, 1887; payable at the First National Bank, Lock Haven, Pa.
                    "HOWARD ROLLING-MILL COMPANY,
                       "Per BERNARD LAUTH, Chairman."

Statement of Facts.

An affidavit of defence having been filed, averring, inter alia, that the draft was not binding upon the defendant company because the acceptance was not signed by two of the managers thereof, the plaintiff, on February 13, 1888, moved to amend the record by striking out the name of the Howard Rolling-Mill Company, Limited, as the defendant in the action, and substituting that of Bernard Lauth. The motion was granted, and an amendment made accordingly. On October 24, 1888, the pleas, non-assumpsit and payment with leave, were entered by the prothonotary for the defendant Lauth.

On July 16, 1888, the National Park Bank of New York brought assumpsit against Bernard Lauth upon two drafts, one for $1,522.30, and the other for $1,498.32, dated August 2, 1887, and August 9, 1887, respectively, drawn by E. S. Wheeler & Co. to the order of themselves, and so indorsed, and accepted on the face thereof in the same form as the draft in the suit before mentioned. The defendant's plea, in this case, was non-assumpsit.

The two cases were tried together on March 18, 1890, when the plaintiffs, under objection and exception,[1] put in evidence the drafts in suit, following them with testimony to show that the plaintiffs were bona-fide holders for value.

There was some evidence that E. S. Wheeler & Co. had made advances of money to the rolling-mill company, and had received notes therefor, and that these drafts were accepted, to take the place of said notes. The precise form and nature of the transaction were not clear upon the testimony.

The defendant Lauth, being sworn as a witness on his own behalf, testified that in 1887 he was a member of the Howard Rolling-Mill Company, Limited, was its chairman and one of the board of managers, though he had nothing to do with the actual management of the business; that he signed the acceptances in question at the request of George Bancroft, who "was the head man" and "attended to the whole business," being the general superintendent of the works; that the witness did not know E. S. Wheeler & Co., and had never received any consideration for the drafts; that he "was under the impression that they needed two signers, and signed as one of them."

The defendant testified further, under objection and exception, as follows: "Q. When you were on the stand before,

you were starting to state what Mr. Bancroft said to you about accepting this draft, about your signing it; now state what was said? A. He told me that this note would be protested the next day if he didn't accept it, and that we were a new company and it would hurt us if our note went to protest. I think I signed it at the bottom; I see I signed it across the draft, but I thought he was to go and sign his name also. Q. Was there anything said about the absence of your son John? A. He said that John was away and he had to get me to-day to sign it, because there had to be two on it. And, of course, I signed it with the understanding that he was to sign it too."

The articles of association of the Howard Rolling-Mill Company, Limited, were put in evidence. From them it appeared that said company was regularly organized as a limited partnership association under the act of June 2, 1874, P. L. 271, and its supplements.

The defendant offered to prove by a witness on the stand that the Howard Rolling-Mill Company, Limited, had been in the habit of executing the notes of the company, in the transaction of their business, by the chairman alone, by the vice-chairman alone, and also by the treasurer of the company; and as evidence of said facts proposed to offer sundry notes, so executed by said respective officers, for the purpose of showing that the chairman, Bernard Lauth, had authority to sign the acceptances in suit so as to bind the company, and that he incurred no individual liability by so accepting.

Offer objected to by plaintiffs.

By the court: Objection sustained; exception.[2]

The testimony being closed, the court, KREBS, P. J., charged the jury in part as follows:

The fifth section of the act of June 2, 1874, is in this language:

"There shall be at least one meeting of the members of the association in each year, at one of which there shall be elected not less than three, nor more than five managers of said association, one of whom shall be the chairman, one the treasurer, and one the secretary, or one may be both treasurer and secretary, who shall hold their respective offices for one year and until their successors are duly installed; and no debt shall be contracted

Charge of Court below.

or liability incurred for said association except by one or more of the said managers, and no liability for an amount exceeding five hundred dollars except against the person incurring it shall bind the association, unless reduced to writing and signed by at least two managers."

[Now, the plaintiff's attorneys, representing the bank in this case, claim that because Mr. Lauth accepted these drafts which have come into the hands of the bank, himself, without any other manager accepting them with him, he made himself liable individually for the amount of these drafts. Now, gentlemen of the jury, that is a pure question of law, and not free from difficulty to my mind, but it is our duty to follow in the line, we think, that the Supreme Court has indicated in reference to this subject. We take it to be law that, at the time Mr. Lauth accepted these drafts, he having accepted them alone, without any other manager signing them with him, he has made himself liable to pay those drafts. He, as a manager of that association, in order to avoid a general liability for the debts of that association, was required to see that all the provisions and regulations of that act of assembly were duly and reasonably complied with. If he did not so see that these regulations were complied with, whether he was manager or not, he would be individually liable for the debts of the association. When it makes a contract, that is, for which the association would be liable, this act is specific in its declarations that when an amount exceeds five hundred dollars the instrument of liability, or cause of liability, or purpose of liability, must be reduced to writing and signed by two of the managers; otherwise the act of assembly in its intent makes them individually responsible.] [4]

Now, there are two reasons for that, as we take it. The first is, that the business of the association shall be conducted in an orderly way; that the members of the association, who may not be managers, may be protected from the carelessness or bad management of any one member of the association; and, as a guaranty of the act of the association, that it has entered into it in good faith for the benefit of the association, or the members of the association, at least two of the managers shall agree that it is a proper act for the association to engage in, and thus fix the liability of the association so as to bind the

association itself and the association's property. Mr. Lauth, being a member of this association and a manager of it, was bound to know what the provisions of this act of assembly were. He could not escape by alleging that he did not know, because he must avail himself, in the management of that business, of the provisions of the act of assembly, or else be liable as a general partner. The second reason is, that if there is a manager of the association who incurs a liability which is not incurred according to the provisions of this fifth section of this act of assembly, to an amount which exceeds five hundred dollars, in order that the persons to whom that debt is due may not be defeated from recovering that with which he may have parted to one supposed to have authority, except on a promise to pay, because that might be a fraud upon that person, so that if the association was not liable he would have a remedy against the individual who accepted the drafts, therefore it was the duty of Mr. Lauth to see that the association was made properly liable, otherwise he is made liable by this act of assembly in his individual capacity.

We have been asked by defendant's counsel to instruct you on two points:

1. If the jury find from the evidence in the cause that the drafts in suit were drawn upon the Howard Rolling-Mill Company, Limited, and accepted by the Howard Rolling-Mill Company, Limited, per Bernard Lauth, chairman, and that the chairman had authority of said company, by usage or by the consent of a majority of the managers, express or implied, to accept the drafts, then the acceptance would bind the company and does not bind Bernard Lauth individually, and the verdict should be for the defendant.

Answer: The acceptance of these drafts in the language by the Howard Rolling-Mill Company, Limited, per Bernard Lauth, chairman, would not in my judgment, of itself make Mr. Lauth liable; but, it appearing that the amounts of the drafts exceed five hundred dollars, and that no other manager of the association has accepted them but him, we are constrained to refuse this point.[5]

2. That the drafts in suit having been drawn upon the Howard Rolling-Mill Company, Limited, and accepted in the name of the company, per Bernard Lauth, chairman, the principal

Arguments.

being fully set forth in the drafts, and they showing clearly on their faces that in the acceptance thereof, per Bernard Lauth, chairman, said Bernard Lauth, chairman, acted as the mere scribe in accepting the drafts, they import no personal liability on his part, and he cannot be held individually liable thereon, and the verdict should be for the defendant.

Answer: For the reasons already given in answer to the first point and our general charge, we are obliged to say we must decline this point.[6]

3. That, under the evidence and pleadings in this case, the verdict must be for the defendant.

Answer: We decline to answer this point in the affirmative.[7]

Now, gentlemen of the jury, that leaves only the question of how much these drafts are, with the interest added.

There seems to be no dispute of fact in this case. Counsel for plaintiffs have presented a statement of the amounts of these drafts, which will be handed to you; and if you find the calculation correct, and the other fact that these banks are bona-fide holders for value, then, under the law, your verdict would be for the plaintiffs for those amounts. . . . .

—The jury returned verdicts in favor of the plaintiffs for $1,686.09 and $3,441.87, respectively. Rules for new trials having been discharged, judgments were entered on the verdicts on January 23, 1891; whereupon, the defendant took these appeals assigning for error inter alia:

1. The admission of plaintiffs' offer.[1]

2. The refusal of defendant's offer.[2]

4. The part of the charge embraced in [ ][4]

5–7. The answers to defendant's points.[5 to 7]

*Mr. John G. Love* and *Mr. Wayne MacVeagh,* for the appellant:

1. It is well-established law that no one can be the acceptor of a draft but the drawee or his authorized agent. If accepted by another than the drawee, it must be accepted supra protest and for honor; otherwise such acceptance will not be valid and binding: 1 Daniel on Neg. Inst., § 485; Shelton *v.* Darling, 2 Conn. 435. There can be but one acceptor. When a bill is drawn on a corporation by name, and is accepted by its appropriate officer or agent in his individual name, the acceptance

Arguments.

will bind the company only: Merchants N. Bank v. Bank, 10 Wall. 604; 1 Daniel on Neg. Inst., § 412.

2. When an agent, executing an instrument, fully discloses his principal, and it appears on the face of the paper that he acts ministerially only and without intent to bind himself, he is not bound: 1 Daniel on Neg. Inst., §§ 298, 400, 402; Roberts v. Austin, 5 Wh. 311; Hopkins v. Mehaffy, 11 S. & R. 126; Abrams v. Musgrove, 12 Pa. 292; Sharpe v. Bellis, 61 Pa. 69; Passmore v. Mott, 2 Binn. 201. Nor does an agent, exceeding his authority in signing his principal's name to a paper, become liable as a party to the paper; only in an action for falsely assuming to bind another: 1 Daniel on Neg. Inst., §§ 306, 307. The drafts in suit certainly come within the principles above stated.

3. And the court erred in its construction of § 5, act of June 2, 1874, P. L. 271. There is no specific declaration in the act that the person assuming to sign for the association shall be liable personally, in case two managers do not sign the obligation. It was merely intended to enact that no liability should bind the association without the prescribed formalities. But, to prevent any inference that one of the partners should not be liable at common law for his contracts, the phrase, "except the person incurring it," was introduced. The provision was intended for the benefit of the association, and could be waived by it.

4. The object of the act of 1874 was to preserve the partnership theory of association, and to limit the agency of each partner or the manager of the partners. Establish the agency in any particular case by proof or waiver, and the liability fastens the association. Moreover, this was an executed contract; that is, the company received the benefit of the proceeds of the drafts, and there was nothing left for it to do but to pay. In such case, it cannot set up a plea of ultra vires, but is liable itself upon the acceptance: Oil Creek etc. R. Co. v. Transp. Co., 83 Pa. 160; Pierce on Railroads, 516, 517; Clark v. United States, 5 Otto 539. Under the testimony of Mr. Lauth, the question of his authority to accept the drafts should have been submitted to the jury: Chestnut Hill Turnp. Co. v. Rutter, 4 S. & R. 6 ; Pittsb. Melt. Co. v. Reese, 118 Pa. 355.

Arguments.

*Mr. C. M. Bower* ( with him *Mr. H. T. Harvey, Mr. John H. Orvis* and *Mr. Ellis L. Orvis* ), for the appellees :,

There is no question that the plaintiffs are bona-fide holders for value of these drafts, and their right to recover against some one is therefore undoubted.

1. Under the plain and unambiguous language of § 5, act of June 2, 1874, P. L. 271, and the equally plain decisions of this court, these acceptances, being for amounts exceeding $500, not having been signed by two managers of the association, are not binding upon it: Pittsb. Melt. Co. v. Reese, 118 Pa. 355. The restriction of the doctrine of ultra vires, referred to in the appellant's argument, is not applicable to cases arising under the act of 1874. The doctrine of ultra vires is not founded upon any positive statute, but is the creation of the courts, as is also the restriction of that doctrine to which appellant's counsel refer. There is no analogy between that doctrine and the positive statutory provision above cited. The position that contracts informally made by limited partnership associations are binding upon them, if carried into execution by the other party, has been overruled by this court: Walker v. Brewing Co., 131 Pa. 546.

2. That Lauth himself is personally liable, is plain both from the express wording of the statute and upon principle. Its plain and obvious meaning is that if any manager attempts to bind the company for a liability exceeding $500, without writing, signed by at least two managers, the company shall not be bound, but the person so attempting to bind it shall be personally liable. This is the only construction which will give effect to the entire language of the section. But, on general principles, the defendant is liable, having attempted to bind his principal beyond the extent of the authority delegated to him: Story on Agency, 264; Evans on Agency, 301; Parsons on Contracts, 67; Kroeger v. Pitcairn, 101 Pa. 317; Hampton v. Speckenagle, 9 S. & R. 212; Layng v. Stewart, 1 W. & S. 222; McConn v. Lady, 10 W. N. 493. A partner is liable upon his indorsement or signature of the firm name, though his copartners or the firm may not be bound thereby: Rockafellow v. Phœnix Bank, 12 Leg. Int. 278; Heft v. Basford, 43 Leg. Int. 414.

Opinion of the Court.

OPINION, MR. JUSTICE WILLIAMS:

The plaintiff is the indorsee of a draft drawn by E. S. Wheeler & Co., on the Howard Rolling-Mill Company, Limited, payable to their own order. The drawee is a joint-stock association or limited partnership, organized under the act of June 2, 1874. An acceptance was written across the face of the draft, and executed in the name of the drawee, "per Bernard Lauth, Chairman." The plaintiff seeks to charge Lauth personally with the amount of the draft, alleging that his execution of the acceptance was not enough to bind the company, and a judgment against him was recovered in the court below. The ground of the recovery is found in the following provision of the fifth section of the act of 1874: "No debt shall be contracted or liability incurred for said association except by one or more of the said managers, and no liability for an amount exceeding five hundred dollars except against the person incurring it shall bind said association, unless reduced to writing and signed by at least two managers." The signing of the acceptance, "per Bernard Lauth, Chairman," was treated as an attempt to bind the company for a debt exceeding five hundred dollars contrary to the provision above quoted, which imposed no liability on the company, but rendered him personally liable for the amount of the draft.

The first question presented by these facts relates to the duty to inquire resting on the purchaser of a bill or note. When a note is offered, the bank or other party to whom it is presented is bound to take notice of the instrument, and to know whether it is negotiable. Notice must also be taken of the maker or drawee, and whether such maker or drawee is a private person, a firm, a corporation, or an unincorporated association. The purchaser must also know, at his peril, what is necessary to constitute an acceptance or an indorsement, and, in the case of an artificial person, who is the proper person to bind it. When this draft was presented at the counter of the plaintiff for discount, it came from E. S. Wheeler & Co., who were drawers, payees, and indorsers. Their indorsement was an affirmance that the acceptance was properly executed, and an engagement that the drawee would pay, or they would do so for it: Chitty on Bills, 266; Wood's Byles on Bills, 156. If the acceptance was not sufficient to bind the company, be-

cause not made as required by law, it was an unaccepted bill, which the purchaser could only take on the credit of the drawer and indorser: Byles on Bills, 168. Strangers dealing with a limited partnership or joint-stock association, organized under the act of 1874, are bound by the limitations imposed upon it by the act. This was distinctly ruled in Pittsburgh Melting Co. v. Reese, 118 Pa. 355. The bank was bound to know, therefore, what was necessary to a valid acceptance by the Howard Rolling-Mill Company, Limited. It discounted this draft with knowledge that it was not accepted by the company until two managers had signed the acceptance on its behalf, and is in no position to complain that it was misled by Lauth, whatever ground of complaint it may have against its indorsers, from whom it derived its title. What the acceptance lacked, as the plaintiff alleges, was the name of another manager. If it had intended to rely on the responsibility of the drawee, it should have returned the draft that the acceptance might have been completed, but, as it did not do this, it is fair to presume that it was satisfied to take the draft on the credit of the drawers and indorsers.

But, if this position could be regarded as doubtful, the defendant had a right to go to the jury on the question of fact. He denied that he desired or intended to bind the company by his signature to the acceptance. He testified that, although a manager and chairman of the board of managers, he was not engaged in the active business of the company; that Bancroft, who brought the draft to him, and told him that it would be protested and the credit of the company injured, unless it was accepted that day, was "the head man" in the management and direction of the business, and was also a manager. In regard to the signing of the acceptance, he testified: "I was under the impression they needed two signers, and I signed as one of them." Again, speaking of the same subject, he said: "I see I signed it across the draft, but I thought he (Bancroft) was to go and sign his name also." He did just what it was necessary to do, as he understood it. He signed as one of the two managers needed, expecting Bancroft would sign as the other. If Bancroft had done so, then the acceptance would have borne the names of two managers, and Lauth's act in signing first would have imposed no personal liability. The forgetfulness

Syllabus.

of Bancroft in enclosing the draft before the acceptance was completed, cannot be held to change the character of Lauth's act, and render him liable as a matter of law. His liability depends on the fact which he so stoutly denies. If he made use of this draft as the means of incurring a debt in the name . of the company, and binding the company for its payment by his single act of acceptance on its behalf, then it may be that the plaintiff has a just cause of action against him. But, if he signed, as he testifies that he did, so that his name should be one of the two that were needed, then, instead of disregarding, he was complying with the law; and, if the acceptance was not completed by the other manager, before sending the draft away, we do not see how Lauth can be charged with the whole debt because of the neglect, intentional or unintentional, of his fellow-manager to complete the acceptance.*

　　　　　　　The judgment is reversed, and a venire facias de novo awarded.

---

* This opinion was filed in the Supreme Court, to both causes.